IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN E., <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Respondent. | No. 20 C 5784 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

John E.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 6]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have filed cross-motions for relief [ECF Nos. 20, 23]. For the reasons discussed below, Claimant's Motion to Reverse the Decision of the Commissioner of Social Security [ECF No. 20] is granted, and the Commissioner's Motion for Summary Judgement [ECF No. 23] is denied.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

**PROCEDURAL HISTORY**

**A. Prior Application and ALJ Decision**

The following facts are taken from a previous opinion issued by this Court. *See John E. v. Kijakazi*, 2021 WL 4125089 (Ill. N.D. Sept. 9. 2021). On August 28, 2014, Claimant filed a Title II application for disability insurance benefits, alleging a disability beginning on January 18, 2013. His claim was denied initially, and upon reconsideration, after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). On November 2, 2016, Claimant appeared at a hearing before ALJ Diane Davis, but that hearing was continued so Claimant could find an attorney to represent him. A second hearing was held on March 7, 2017, at which Claimant was represented by counsel, and ALJ Davis heard testimony from Claimant and an impartial vocational expert, Edward P. Steffan. On May 18, 2017, ALJ Davis found that Claimant was not under a disability from January 18, 2013, the alleged onset date, through March 31, 2017, the date last insured, and denied his claim for disability benefits.

Claimant asked the Appeals Council to review the ALJ's decision. The Appeals Council granted Claimant's request for review on April 23, 2018, and issued a written decision on June 27, 2018, finding that Claimant was not entitled to disability benefits. The Appeals Council, however, noted that Claimant last met the insured status requirements of the Social Security Act on June 30, 2017 (which was 3 months later than what ALJ Davis had found), meaning that the ALJ's decision left an unadjudicated period from April 1, 2017 through May 18, 2017, the date of the ALJ's

decision. The Appeals Council adopted the ALJ's "statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable." 2021 WL 4125089, at *2. Because there were no changes and no new evidence submitted,[3] the Appeals Council also adopted the ALJ's findings and conclusions from January 18, 2013 through March 31, 2017 and for the previously unadjudicated period from April 1, 2017 through May 18, 2017.

Specifically, the Appeals Council adopted all of the ALJ's findings from Steps 1 through 5 of the sequential evaluation and agreed that Claimant had the RFC "perform a reduced range of light work with occasional balancing, stooping, kneeling, crouching, crawling and climbing ramps or stairs, but can never climb ladders, ropes, or scaffolds. The claimant should avoid concentrated exposures to temperature extremes, pulmonary irritants and hazards such as unprotected heights." 2021 WL 4125089, at *2. Ultimately, the Appeals Council agreed with the ALJ that Claimant's "limitations do not significantly erode the light, unskilled, occupational base" and that there were a significant number of jobs Claimant is capable of performing despite his limitations. A finding of "not disabled," the Appeals Council reasoned, was thus appropriate under the Act. In a decision dated September 9, 2021, this Court reviewed and affirmed the Appeal's Council decision, denying Claimant's application for disability insurance benefits from January 18, 2013 through May 18, 2017.

---

[3] Although Claimant's attorney did request, and was granted, more time to submit additional information to the Appeals Council, it appears that Claimant ultimately did not submit a statement or any additional evidence for the Appeals Council to review.

3

## B. Current Application and ALJ Decision

In the present case, Claimant protectively filed a new Title II application on July 28, 2018 for disability insurance benefits for a period of disability from May 19, 2017, which is the day after the period of disability in his first application for benefits that was denied, through September 30, 2017, which is a new date on which he was last insured and eligible for benefits. (R.13). This new application was denied initially on September 12, 2018, and upon reconsideration on December 17, 2018, after which Claimant again requested a hearing before an ALJ. (R.13). On August 21, 2019, Claimant, who was represented by counsel, appeared at a hearing before ALJ Kathleen Kadlec during which Claimant and a vocational expert testified. On October 9, 2019, ALJ Kadlec issued her decision denying Claimant's current application for disability benefits and specifically noted that her decision related only to the new application for benefits that was filed on July 28, 2018. (R.13-25).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Claimant did not engage in substantial gainful activity during the relevant period from May 19, 2017, his alleged onset date, through September 30, 2017, his date last insured. (R.15-16). At step two, the ALJ found that Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c). (R.16). Specifically, Claimant suffered from recurrent arrhythmias, emphysema, hypertension, obstructive sleep apnea, and obesity. (R.16). The ALJ also acknowledged a non-severe

4

impairments acute otitis of the right ear and diabetes mellitus, but concluded that these impairments did not cause work-related limitations. (R.16).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R.17). In particular, the ALJ considered listings 3.02 and 3.09, but concluded that Claimant did not meet or medically equal the severity of those listings. (R.17). The ALJ also touched on Claimant's obesity but noted that there was no evidence of record that Claimant's obesity contributed to any other severe impairment such that, in combination, those impairments would meet listing level severity. (R.17).

The ALJ then found Claimant had the RFC,[4] through his date last insured, to "perform light work, as defined in 20 CFR 404.1567(b) with the following exceptions: No more than occasional stooping, kneeling, crouching, crawling, overhead reaching bilaterally, or climbing of ramps and stairs. No climbing of ladders, ropes, or scaffolds. No more than occasional exposure to unprotected heights or work in humidity, wetness, dust, odors, fume, or pulmonary irritants. No outside work or work in extreme heat or cold." (R.18). Based on this RFC, the ALJ found at step four that Claimant had past relevant work as a construction worker but that work, which was very heavy, exceeded Claimant's RFC and could no longer be performed. (R.22-23).

---

[4] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

5

At step five, the ALJ concluded that, considering Claimant's age, education, past work experience, and RFC, he is capable of performing other work within the national economy and that those jobs exist in significant numbers. (R.23-24). Specifically, the VE's testimony, on which the ALJ relied, identified jobs including unskilled light occupations such as inspector, sorter, and office helper that Claimant could perform and that are available in significant numbers in the national economy. (R.24). The ALJ then concluded that Claimant was not under a disability from May 19, 2017, the alleged onset date, through September 30, 2017, the date last insured. (R.24).

The Appeals Council denied Claimant's request for review on July 27, 2020, making the ALJ's decision the final decision of the Commissioner. (R.1). Therefore, this Court now has jurisdiction to review this matter. *See* 42 U.S.C. § 405(g); *see also Smith v. Berryhill,* 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, he bears the burden under the Social Security Act to bring forth evidence that proves his impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *Bowen v. Yuckert*, 482 U.S. 137, 147-48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005); 20 C.F.R. § 416.920)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotations omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek,* 139 S.Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when

7

there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the ALJ's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

### A. Evidentiary Gap in the Medical Opinion Evidence

Claimant argues that the ALJ did not properly consider and weigh the medical opinions in the record, and therefore, the ALJ's decision is not supported by substantial evidence. Claimant contends that the ALJ erred in not crediting the opinions of Parag Jain, M.D., Claimant's cardiologist, and Jitinder Singh, D.O., Claimant's primary care physician, and that the ALJ should have accepted their opinions on Claimant's work preclusive limitations. Claimant's Brief [ECF No. 20], at 4-13.

As a threshold matter, ALJ Kadlec noted in her decision that the medical opinions upon which Claimant relies in support of his current claim for disability benefits are the exact same opinions he submitted in support of his previous application for benefits. Those opinions were determined to be not supported by the record, and Claimant was finally adjudicated as not disabled, a determination that Claimant does not address. Moreover, Claimant did not appeal that prior decision finding him not disabled. After considering *sua sponte* whether to reopen Claimant's prior application, ALJ Kadlec determined it was not appropriate, and Claimant does not challenge that decision either.

Claimant nevertheless argues that ALJ Kadlec erred in not considering and relying upon Dr. Jain's opinion in this case because she referred to ALJ Davis's previous assessment of that medical opinion. Claimant suggests that ALJ Kadlec did not evaluate the medical opinion on her own but rather adopted ALJ's Davis's analysis, and that is an error mandating remand. The Court disagrees.

In this Court's prior opinion on Claimant's previous application for disability insurance benefits, the Court found that Dr. Jain's opinions were largely based on Claimant's subjective reports and were inconsistent with his own records and notes and there was insufficient other evidence in the record to support his opinions. *John E.*, 2021 WL 4125089, at *10-11. And in this case, ALJ Kadlec noted that Claimant did not submit any new evidence that persuaded her otherwise or lead to a different conclusion. (R.22). In the Court's view, therefore, Claimant's continued reliance on Dr. Jain's prior opinion is misplaced. To be clear, Claimant does not offer any

9

explanation why the older opinion of Dr. Jain or the opinion of Dr. Singh that were previously found to be inconsistent with the medical evidence should nevertheless be considered with his current application. Claimant contends that ALJ Kadlec erred in assessing Dr. Jain's opinion because she in essence "adopted" ALJ Davis's conclusions as her own. Claimant's Brief [ECF No. 20], at 12. The Court does not read ALJ Kadlec's assessment of the medical evidence the same way Claimant does. The Court, however, does agree with Claimant that there is an evidentiary gap in the medical evidence that requires remand.

An ALJ "must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). Here, the ALJ did not credit the opinions of Claimant's treating physicians, which is not to say that was an error because it is generally within the ALJ's purview to weigh medical opinions consistent with the regulations. 20 C.F.R. § 404.1520c(b)(2), (c). Also significant in the Court's view is that the state agency doctors opined that there was "a lack of sufficient evidence in the record to make a determination regarding the claimant's ability to do work-related activities, and therefore declined to make specific findings or recommendations regarding the claimant's residual functional capacity." (R.22). Without medical opinions from Claimant's treating physicians or medical opinions from the state agency doctors, there are no other medical opinions in the record for the ALJ to rely on when formulating Claimant's RFC.

10

An ALJ "cannot reject all the relevant medical RFC opinions and then construct a 'middle ground' and come up with [her] own RFC assessment without logically connecting the evidence to the RFC findings," particularly when in this case the opinions of the treating physicians are determined to be not supported by the medical evidence and the state agency doctors indicate there is insufficient evidence in the record to make a determination regarding Claimant's ability to do work-related activities. *Darlene M. v. Kijakazi*, 2021 WL 3773291, at *5 (N.D. Ill. 2021) (cleaned up); *see also Suide v. Astrue*, 371 Fed. Appx. 684 (7th Cir. 2010) (an ALJ may not substitute her lay opinion for all other medical sources in record); *Kara v. Kijakazi*, 2022 WL 4245022, at *2 (E.D. Wis. 2022) ("The freedom to discount certain medical opinions is not the same as the freedom to substitute layperson opinion.").

In this case, the state agency physicians stated there was not enough evidence in the record for them to make any specific findings or recommendations regarding Claimant's RFC, and the ALJ rejected the other medical opinion evidence as unpersuasive. The ALJ then made an RFC determination based on her own view of the objective medical evidence and hearing testimony. (R.18-22) This violated Seventh Circuit precedent, which makes clear "that an ALJ must not substitute [her] own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

When the ALJ found the medical opinions of Claimant's treating physician unpersuasive and did not have any opinions from the state agency physicians to consider, in the Court's view, she should have recruited a medical expert or solicited

11

updated opinions from Claimant's treating physicians to fill the resulting evidentiary gap. *See Daniels v. Astrue*, 854 F. Supp. 2d 513, 523 (N.D. Ill. 2012). Without the aid of an expert or any other medical opinion evidence, the Court cannot determine whether the ALJ made supportable conclusions based on the record evidence, or improperly used her own opinions to fill the evidentiary void.

"As the Seventh Circuit has made clear, 'ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves.'" *Barbarigos v. Berryhill*, 2019 WL 109373, *12 (N.D. Ill. Jan. 4, 2019) (quoting *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018)). Although the ALJ cited to medical records to support her RFC determination, "the ALJ is not a medical expert and cannot interpret medical evidence." *Id.* The Court understands the ultimate responsibility to formulate an RFC belongs to the ALJ; however, "an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how [she] has reached [her] conclusions." *Amey v. Astrue*, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012).

In this case, there "is no medical assessment which supports a finding that [Claimant] can perform" all of the requirements contained in the ALJ's RFC. *Barbarigos v. Berryhill*, 2019 WL 109373, at *12 (N.D. Ill. Jan. 4, 2019). Without any medical expertise or other opinion evidence, it is not clear how the ALJ determined that the findings she made in her decision, including what Claimant can and cannot do, support her RFC assessment. *Id.* Having no medical opinion evidence that supports the RFC finding, the ALJ essentially provided her own assessment of the

medical evidence as well as Claimant's abilities and limitations to fill in the gap and ultimately concluded that Claimant can perform light work on a full-time basis, which is reversible error. *See Suide v. Astrue*, 371 Fed. Appx. 684, 690 (7th Cir. 2010) (ALJ is not allowed to "play doctor" by using his or her own lay opinions to fill evidentiary gaps in the record). In short, the ALJ's RFC finding is not supported by substantial evidence, and remand is required for further development of the medical opinion evidence and record to fill the evidentiary gap and to support the RFC determination.

### B. The ALJ Reasonably Assessed Claimant's Subjective Statements

Even though the Court could stop at this point since the case is being remanded, the Court will address some of Claimant's arguments with which it disagrees to provide a more complete picture of how the Court evaluated Claimant's arguments and the ALJ's opinion. Claimant argues that the ALJ erred in her assessment of his subjective symptoms and limitations. The Court, however, is not persuaded by this argument.

An ALJ's evaluation of Claimant's subjective symptom statements is entitled to deference and will be upheld unless it is "patently wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support"). The ALJ discounted Claimant's testimony regarding the intensity, persistence, and limiting effects of his symptoms because she found that his testimony was inconsistent with the objective medical evidence and his activities of daily living, course of treatment,

13

and functional limitations. (R.20-21). In the Court's view, the ALJ's assessment of Claimant's subjective complaints was sufficient to provide a fair sense of how she viewed his statements, and she explained that while she credited and accommodated some of Claimant's reported symptoms and limitations, his statements about the severity of his limitations were inconsistent with objective medical evidence and with treatment he received. (R.20-21). In the Court's view, the ALJ reasonably concluded that Claimant's denial of symptoms and normal examinations during the relevant period undermined his subjective assertions about his limitations. *See* 20 C.F.R. § 404.1529(c)(1), (2); SSR 16-3p, 2017 WL 5180304, *5.

The ALJ also considered Claimant's course of treatment. (R.20); *see* 20 C.F.R. § 404.1529(c)(3)(v) (noting that the ALJ should consider type and effectiveness of treatment that a claimant receives); SSR 16-3p, 2017 WL 5180304, at *6-7 (same). Specifically, the ALJ found that Claimant's testimony regarding his use of a BiPAP machine called into question his statements, complaints, and limitations. (R.21). When the ALJ inquired about data from the BiPAP machine that might have reflected on his condition, Claimant testified that because his BiPAP machine had been donated to him he was unsure if anyone was monitoring results. (R.21, 34, 45-46). The ALJ was skeptical of that explanation, because it did not align with notes from Claimant's physician, who instructed Claimant to download the data from his BiPAP machine. (R.21) (citing R.379). The ALJ also noted that medical records did not substantiate Claimant's assertion that he needed to use his BiPAP machine with oxygen several times per day. (R.21, 44). The medical evidence only included

14

references to using the BiPAP machine at night, and Claimant said that he did not use oxygen without the BiPAP machine. (R.21); *see, e.g.*, (R.340) (used BiPAP nightly); (R.365) (same); (R.374) (same). Contrary to Claimant's argument, the ALJ did not speculate on these points. Claimant's Brief [ECF No. 20] at 15. She referred to specific evidence in the record.

The ALJ also considered that Claimant's treatment with medication largely was effective during the relevant period. (R.21); *see also* 20 C.F.R. § 404.1529(c)(3)(v); SSR 16-3p, 2017 WL 5180304, at *6-7. The ALJ specifically noted that the record indicates one medication completely resolved his gastro-intestinal symptoms. (R.21) (citing R.385). The ALJ also noted in her decision that Dr. Naghdi-Ciaciura continued Claimant's medications without change during the relevant period, suggesting that they were effectively addressing his complaints. (R.19) (citing R.383). In the Court's view, the ALJ's discussion of the Claimant's subjective symptoms was sufficient to provide a sense of how the ALJ assessed them.

Claimant's primary complaint is that the ALJ did not discuss his daily activities. Claimant's Brief [ECF No. 20], at 14. But an ALJ is not required to discuss every regulatory factor in her decision. *See, e.g., Elder*, 529 F.3d at 415-16 (affirming decision of ALJ who discussed only two factors); *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) (holding that "the ALJ need not explicitly discuss and weigh each factor"); *Joyce C. v. Kijakazi*, 2021 WL 4264274, *7 (N.D. Ill. Sep. 20, 2021) ("An ALJ need not explicitly discuss each factor…."). And, contrary to Claimant's argument, the ALJ actually did refer to some of his reports about his regular activities,

15

demonstrating that she was aware of and had considered them. (R.20). On balance, however, the ALJ's decision shows that she found the objective medical records and Claimant's course of treatment more important to her assessment of his statements. It is the ALJ's job to weigh the evidence, and the ALJ's evaluation of Claimant's subjective symptom statements is entitled to deference. In this case, the Court finds the ALJ's assessment was reasonable, supported by the evidence, and should be affirmed. The Court recognizes, however, that on remand the ALJ may seek updated medical opinions from Claimant's treating physicians, the state agency physicians, and/or a medical expert and that in light of those opinions, the ALJ may revisit her subjective symptom analysis.

### C. Constitutional Argument and Separation of Powers Clause

Claimant also seeks remand based on a constitutional separation of powers challenge. He argues that the statutory removal protection for a Commissioner of Social Security found in 42 U.S.C. § 902(a)(3) is a constitutionally defective delegation of power because the Commissioner is allowed to serve for a longer term than the President and cannot be removed except for cause. In Claimant's view, since the Commissioner's statutory authority is defective, the ALJ and the Appeals Council operating under the Commissioner exercised power they did not lawfully possess, compelling remand under Supreme Court precedent in *Seila Law LLC v. Consumer Fin. Protection Bureau*, 140 S. Ct. 2183 (2020). However, Claimant's "failure to show that any injury resulted from this allegedly invalid delegation of authority makes this

16

argument a nonstarter." *Michelle S. v. Kijakazi*, 2022 WL 4551967, at *6 (N.D. Ill. Sept. 29, 2022).

The Commissioner agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers "to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." Commissioner's Brief [ECF No. 24], at 2-3 (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021) ("OLC Op.")). Under the Supreme Court's decision in *Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021), however, a claimant seeking relief on that basis must show that "the restriction actually caused h[im] harm in 'some direct and identifiable way.'" *Michelle S.*, 2022 WL 4551967, at *6 (quoting *Cheryl T. v. Kijakazi*, 2022 WL 3716080, at *4 (N.D. Ill. Aug. 29, 2022)). "[T]he mere fact of a disappointing outcome on [an] application for Social Security benefits will not suffice." *Id.*

Here, Claimant does not identify any harm that he suffered other than the denial of his request for disability benefits. In accordance with the overwhelming weight of authority in this circuit and nationwide, this Court finds Claimant's constitutional argument to be without merit and does not remand on this issue. *See Lissette B. v. Kijakazi*, 2023 WL 2572431, at *2 (N.D. Ill. Mar. 20, 2023); *Kristen K. v. Kijakazi*, 2022 WL 6123338, at *6 (N.D. Ill. Oct. 7, 2022); *Michelle S.*, 2022 WL 3716080, at *7 (collecting cases).

### D. Remaining Issues

The Court expresses no opinion on Claimant's remaining arguments, or the decision to be made on remand. But the Court does encourage the Commissioner to do what is necessary to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that [she] may build a 'logical bridge' between the evidence and his conclusions"); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994).

### CONCLUSION

Accordingly, for all of the reasons set for in the Court's Memorandum, Opinion and Order, Claimant's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 20] is granted, and the Commissioner's Motion for Summary Judgement [ECF No. 23] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: June 21, 2023